UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER LYNN MOTHERSHEAD,<br><br>Petitioner,<br><br>v.<br><br>DEBORAH J. WOFFORD,<br><br>Respondent. | CASE NO. C21-5186 MJP<br><br>ORDER DENYING PETITION FOR HABEAS CORPUS |

This matter comes before the Court on Petitioner's Petition for Habeas Corpus (Dkt. No. 1) and Motion to Strike (Dkt. No. 96). Having reviewed Petitioner's Brief on Remaining Claims (Dkt. No. 89), the Motion to Strike (Dkt. No. 96), the Answer to Petitioner's Brief on Remaining Claims (Dkt. No. 90), the Reply (Dkt. No. 92), and all supporting materials, the Court DENIES the Petition.

**BACKGROUND**

Through her § 2254 habeas petition, Petitioner Jennifer Lynn Mothershead argues that she received ineffective assistance of counsel in violation of the Sixth Amendment and asks that

her conviction be vacated. Mothershead was found guilty of child abuse in the first degree and sentenced to 480 months in prison. At trial, the State presented circumstantial evidence from both fact and expert witnesses that Mothershead had adulterated prescription eye drops with bleach and administered them to her young daughter. Mothershead contends that her trial counsel provided ineffective assistance because she did not retain Dr. Richard Pleus, a toxicologist, to provide his expert opinion critical of the State's experts, and that she relied solely on cross-examination to defend her client.

The Court previously granted Mothershead's request to pursue an evidentiary hearing to develop Pleus's testimony to resolve her ineffective assistance claim. (Dkt. No. 65.) But the Ninth Circuit reversed the Court's decision, holding that Mothershead's petition "is subject to review under § 2254(d)" and that "[r]eview under § 2254(d) is limited to the state court record." (Ninth Circuit Memorandum at 2 (Dkt. No. 83).) On remand, the Court set a case schedule for the Parties to brief Mothershead's remaining claims in light of the Ninth Circuit's decision. Below, the Court reviews the trial and post-convictions proceedings and the proceedings before this Court.

A.  **Mothershead's Trial**

In 2012, the State of Washington charged Mothershead with first-degree assault of a child—her one-year-old daughter, KM. The State's believed that Mothershead had added bleach to tobramycin eyedrops prescribed by KM's doctors and gave them to her over a period of months. The State's case relied extensively on medical opinions and expert toxicologists to support the theory that Mothershead had adulterated the drops with bleach.

When Mothershead's case was assigned to attorney Jane Pierson, a seasoned public defender, little to no investigation had been completed. (Declaration of Jane C. Pierson ¶¶ 1, 4-5

(Dkt. No. 13 at 166-67).) With the help of an investigator, Pierson identified Dr. Richard Pleus, a "pharmacologist/toxicologist with a post-doctoral specialization in neuropharmacology and experience as a lecturer in eye toxicology." (Id. ¶ 10.) Pierson obtained funding for and retained Pleus to "evaluate the data underlying the prosecution's scientific claims that the suspect eye drops were adulterated and caused injury to . . . Mothershead's daughter[.]" (Id. at ¶ 11.) Pleus was given the laboratory data from both the Washington State Patrol (WSP) Crime Laboratory and the Food and Drug Administration (FDA) Laboratory and Mothershead's daughter's medical records and other records describing "the history of the case." (Id.)

Pleus provided a letter and memorandum to Pierson in mid-May 2013, outlining his initial opinions. (Pierson Decl. ¶ 12; Pleus Memorandum (Dkt. No. 13 at 173).) In his Memo, Pleus wrote:

> You have asked me to evaluate whether claims made by the Plaintiff (the State of Washington) that alleged exposures to adulterated medication resulted in the adverse health effects observed in the Defendant's daughter, K M . To do so, I have reviewed information you have provided, including forensic laboratory data, medical records, diagnoses, and objective observations, including signs, symptoms, and medical tests performed by or under the direction of a physician. I have also conducted independent research and compared and contrasted those data with data in the toxicological literature.
>
> More specifically, I have analyzed the forensic laboratory reports from the Washington State Crime Lab and the FDA Forensic Chemistry Center. In addition, I have reviewed the medical records regarding KM's condition and prescribed medication. All court documents and witness statements have been reviewed as well.
>
> My initial opinion, subject to completing my research thoroughly, is that the data provided to me does not scientifically support the Plaintiff's case that the medication that was administered to K M caused the adverse effects that are reported in the medical records. I have considered a number of possible scenarios, including that Ms. Mothershead did adulterate the medication.

(Dkt. No. 13 at 173.) In June 2013, Pleus sent a follow-up letter reiterating the same "initial opinion," and proposing to complete his analysis and assessment and draft a report. (Dkt. No. 13 at 174-75.) Dr. Pleus requested $8,000 to complete this work. (Id. at 175.)

1    Pierson's request for approval of Pleus's additional work was denied by the Department
2    of Assigned Counsel and she did not request Pleus or any other expert to help her prepare to
3    cross-examine the State's medical and forensic scientific expert witnesses. (Pierson Decl. ¶¶ 14,
4    16.) At trial, Pierson presented no expert testimony on Mothershead's behalf. Pierson has
5    explained in a post-trial declaration that her "failure to seek additional funding for Dr. Pleus to
6    complete his work was not a strategic decision." (Id. at 19.) She also averred that at some point
7    after trial she "learned that [she] misinterpreted Dr. Pleus' initial opinion" as "referring to data
8    from the compounding pharmacy" when he was actually referring to lab data from the FDA and
9    WSP Crime Lab. (Id.) After trial Pierson came to believe that "Dr. Pleus's initial opinion
10   constituted exculpatory evidence that [she] possibly could have offered in Ms. Mothershead's
11   defense." (Id.) She avers that "[h]ad [she] correctly understood the import of Dr. Pleus's initial
12   opinion, [she] would have more vigorously sought additional funding to complete Dr. Pleus's
13   work." (Id.)
14        At trial, the State presented testimony from ten physicians involved in KM's treatment,
15   who testified about her eye condition, the unsuccessful efforts to diagnose and treat her, and the
16   causes they considered to explain KM's symptoms. (In re Pers. Restraint Pet. of Mothershead,
17   No. 51119-3-II, Unpublished Opinion at 4-5 (Wash. Ct. App. Div. II May 19, 2020) (Dkt. No. 13
18   at 188-207) ("Mothershead I"). Five forensic chemists from the FDA "testified about the
19   chemical composition of the tobramycin eye drops" and "agreed that KM's eye drops contained
20   chloride, a by-product that would be expected if the eye drops had been contaminated by
21   bleach." (Id. at 5.) But as Respondent concedes, the "prosecution had no direct evidence
22   establishing that Mothershead herself had contaminated the eye drops with bleach which meant
23   that the prosecution had to rely on circumstantial evidence to establish the critical link between
24

Mothershead and crime the prosecutor herself described as 'unthinkable.'" (Answer at 18 (Dkt. No. 90).)

At trial, Pierson sought to undermine the State's conclusions that a foreign substance had been added to the tobramycin drops and that someone else had tampered with the drops. (Mothershead I at 5.) Mothershead testified at trial, but she was not asked to deny that she tampered with the drops. Instead, Pierson's final direct examination question was:

> "Do you have any personal knowledge as to what's been described from these drops of being a dark color and smell and all that stuff?" Verbatim Report of Proceedings (VRP) (Oct. 1, 2013) at 131. Mothershead responded, "No. That's nothing that I've seen." Id.

(Id.) In closing argument, Pierson pointed out inconsistencies in the doctor's testimony, emphasized testimony about other possible causes of KM's eye condition, and questioned the quality of the WSP Crime Lab's testing. (Id. at 5-6.) As the Court of Appeals explained:

> [T]he defense essentially conceded that the drops were contaminated with a "noxious" substance, arguing instead "that's not stuff that Jenny did to it." VRP (Oct. 3, 2013) at 63. Counsel argued that Mothershead did not act guilty—she kept bringing KM back to doctors, she answered the detectives' questions, and she voluntarily handed over the eye drops. Counsel also emphasized that Mothershead was not present just before KM's first eye injury in the barn, nor was she present just before KM's head injury was discovered.

(Id. at 6.)

The jury convicted Mothershead of first degree assault and she was sentenced to 480 months after the jury found by special verdict that her conduct manifested deliberate cruelty. (Mothershead I, at 6.)

**B.    Post-Conviction Proceedings**

After failing to obtain reversal on direct appeal, Mothershead filed a Personal Restraint Petition (PRP) with the Washington Court of Appeals. (Mothershead I.) Mothershead filed the PRP pro se, and advanced her ineffective of assistance of counsel claim. (Dkt. No. 11 at 379-83; Dkt. No. 14 at 656-61.) She asked for an evidentiary hearing on the claim as well as appointment

1  of counsel. (Dkt. No. 11 at 421.) And she supplemented the trial court record with a declaration

2  from Pierson, as well as Pleus's letter and memo. (Dkt. No. 11 at 422-26, 440-52.) She also

3  provided a summary chart identifying gaps in the State's scientific evidence. (Dkt. No. 11 at 429-

4  30.)

5        Before ruling on the PRP, the Court of Appeals granted Mothershead's request for court-

6  appointed counsel "at public expense" under the Washington Rule of Appellate Procedure

7  16.11(b) and 16.15(h). (Dkt. No. 13 at 679-680.) Appointed postconviction counsel was then

8  given leave to file a renewed PRP and to ensure the state-court record was fully presented.

9  Counsel did not supplement the record further, but, like Petitioner, asked for an evidentiary

10 hearing on the IAC claim and argued that the declaration of trial counsel and preliminary

11 opinions of the expert were at least enough to merit a "reference hearing"—the state analog to an

12 evidentiary hearing. (Dkt. No. 13 at 703-06.)

13       The Court of Appeals denied Petitioner's request for a reference hearing and rejected her

14 claim because she "failed to meet her prima facie burden of showing prejudice." (Dkt. No. 13 at

15 198.) The Court of Appeals explained:

16 > Neither of these ineffective assistance claims merits reversal or a reference hearing.
> Mothershead has not shown that she was prejudiced by counsel's failure to retain an
17 > expert because she has not shown what the expert would have said or a reasonable
> likelihood that expert testimony would have changed the outcome of her trial.
18 > Mothershead also has not shown that she was prejudiced by counsel's failure to ask
> whether she added anything to the eye drops because counsel posed questions at the end
19 > of her direct examination that elicited the functional equivalent of a denial. We also hold
> that none of Mothershead's multiple other arguments entitles her to relief. We deny
20 > Mothershead's PRP.

21 (Id. at 188-89.) In assessing the claim more closely, the Court stated:

22 > "When a petitioner's evidence "is based on knowledge in the possession of others," the
> petitioner "must present their affidavits or other corroborative evidence" explaining what
23 > that person would say. Rice, 118 Wn.2d at 886; see also In re Pers. Restraint of Davis,
> 152 Wn.2d 647, 740, 101 P.3d 1 (2004). Mothershead fails to establish what Dr. Pleus's
24

> opinion ultimately would have been or what he would testify. Mothershead has therefore failed to meet her prima facie burden of showing prejudice.
>
> Moreover, courts assessing the prejudice prong of "'ineffective assistance claims based on a duty to investigate must . . . [consider the claim] in light of the strength of the government's case.'" Davis, 152 Wn.2d at 739 (internal quotation marks omitted) (quoting Rios v. Rocha, 299 F.3d 796, 808-09 (9th Cir. 2002)). The State's experts' testimony amply demonstrated that the eye drops were contaminated and that the contamination caused KM's severe injuries. Even if the defense had called Dr. Pleus to testify, the practical effect on the jury of one defense expert, weighed against the testimony of the State's 15 expert witnesses, would likely have been minimal. Yates, 180 Wn.2d at 41. Defense counsel's primary strategy at trial tacitly acknowledged this by focusing on raising reasonable doubt as to who had contaminated the eye drops rather than on trying to prove that the eye drops were not contaminated. We also reject Mothershead's argument that her counsel's failure to continue working with Dr. Pleus prejudiced her by interfering with counsel's preparation for trial. Mothershead's counsel proficiently cross-examined the State's expert witnesses, and in closing arguments effectively recapped salient details of KM's medical history and pointed out some inconsistencies about the medical testimony. Even if her counsel were deficient in not pursuing Dr. Pleus's opinion as an expert, an issue we do not decide, Mothershead has failed to make a prima facie showing that the alleged deficiency caused prejudice. This claim of ineffective assistance of counsel therefore fails.

(Dkt. No. 197-98.)

In denying discretionary review, the Washington Supreme Court found that the Court of Appeals had properly applied the Strickland standard. The Supreme Court wrote:

> Second, Ms. Mothershead argues that the Court of Appeals erred in not ordering a reference hearing on whether she was prejudiced by counsel's failure to further pursue an expert opinion on whether bleach-contaminated eye drops, which Ms. Mothershead allegedly administered, caused the adverse effects the child suffered. The expert who counsel did consult, Dr. Richard Pleus, came to a preliminary conclusion that the data provided to him did not scientifically support a finding that the medication caused the reported adverse effects, but the Department of Assigned Counsel denied a request for additional funding for Dr. Pleus to conduct a more complete review. Ms. Mothershead asserts that the department's denial stemmed from defense counsel's misinterpretation of Dr. Pleus's preliminary opinion. But the Court of Appeals found no showing of prejudice for two reasons: first, Ms. Mothershead did not show what Dr. Pleus's ultimate opinion would have been or what his testimony would have consisted of, and second, given the overwhelming expert testimony provided by the State (15 experts), there was no reasonable probability the outcome would have been different had Dr. Pleus testified.
>
> Ms. Mothershead does not show that a reference hearing is necessary to resolve

>these issues. She relies mainly on In re Pers. Restraint of Khan, 184 Wn.2d 679, 363 P.3d 577 (2015), but the deficiency there (failure to procure the assistance of an interpreter) potentially affected the trial in a way that could not reasonably be ascertained without further factual development as to the effect the lack of an interpreter had on the defendant's understanding of the proceedings and his ability to assist counsel. See id. at 692. As the Court of Appeals here observed, a claim that counsel failed to conduct an adequate investigation is evaluated in light of the strength of the State's case. In re Pers. Restraint of Davis, 152 Wn.2d 647, 739, 101 P.3d 1 (2004). Ten physicians who were involved in the child's treatment testified on the nature of the child's eye condition, their unsuccessful efforts to diagnose and treat her, and the possible explanations for the child's condition. Five forensic chemists testified about the chemical composition of the eye drops Ms. Mothershead administered, and all agreed they contained chloride, an expected byproduct of contamination with bleach. Dozens of witnesses in all testified for the State. The Court of Appeals could properly conclude without a reference hearing that Ms. Mothershead failed to show there is a reasonable probability the testimony of Dr. Pleus would have altered the outcome.

(Dkt. No. 14 at 48-49) (footnote omitted).

C.     **Procedural History**

Mothershead filed her § 2254 petition, asserting, among other claims, that she received ineffective assistance of counsel. (Pet. (Dkt. No. 1).) Agreeing with the Magistrate Judge's Report and Recommendation, the Court found that Mothershead's claim was procedurally defaulted and that an evidentiary hearing under § 2254(e)(2) was appropriate. (Dkt. No. 65.) Respondent appealed that order, and the Ninth Circuit reversed the Court's decision, finding that the claim was not procedurally defaulted. (Ninth Circuit Memorandum (Dkt. No. 83).) The Ninth Circuit explained that the Court "erred in its predicate determination that Mothershead's claim was procedurally barred and not subject to review under § 2254(d)." (Id. at 2.) The Ninth Circuit found that the "Washington Supreme Court rendered the 'last reasoned [state court] decision'" and that its decision was "a determination on the merits, which is subject to review under § 2254(d)." (Id. (quoting Tamplin v. Muniz, 894 F.3d 1076, 1086 (9th Cir. 2018)).) On remand, the Court permitted additional briefing in light of the Ninth Circuit's ruling, and that briefing on the Petition is now before the Court for a decision.

ORDER DENYING PETITION FOR HABEAS CORPUS - 8

# ANALYSIS

To succeed on her ineffective assistance of counsel claim, Mothershead must show counsel provided deficient performance and that this performance prejudiced the outcome of the trial. The Court agrees with Mothershead that her trial counsel's performance was deficient. But given the incredibly deferential standard the Court must apply, the Court cannot find prejudice.

Below, the Court reviews: (1) the legal standards; (2) counsel's performance; (3) whether the state court either (a) unreasonably determined a lack of prejudice and/or (b) made unreasonable factual determinations; (4) Mothershead's request for an evidentiary hearing; and (5) Mothershead's motion to strike. The Court concludes by issuing a certificate of appealability.

## A.     Legal Standards

Federal habeas relief may not be granted for claims subject to § 2254(d) unless the state court's decision was: (1) contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of federal law; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. See Harrington v. Richter, 562 U.S. 86, 101 (2011); 28 U.S.C. § 2254(d)(1)-(2) (part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410 (2000). To be an unreasonable application of federal law, "the state court's ruling on the claim being presented in federal court [must be] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (quoting

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity" such that "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough, 541 at 664. And AEDPA requires the Court to give the state court "a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington, 562 U.S. at 101.

**B.      Counsel Provided Deficient Representation**

Because the state courts did not expressly rule on Mothershead's claim that her counsel's performance was deficient, the Court reviews the claim de novo and outside the strict confines of AEDPA. Under this standard, the Court agrees with Mothershead that her counsel's performance was deficient.

The Sixth Amendment guarantees the accused a right to counsel and it "imposes on counsel a duty to investigate, because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options." Strickland v. Washington, 466 U.S. 668, 680 (1984). To demonstrate that counsel's performance was constitutionally deficient, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. But "[j]udicial scrutiny of counsel's performance must be highly deferential" and it must consider "all the circumstances." Id. at 688-89. The Court's assessment of counsel's performance is not subject to AEDPA's exacting standards and is subject instead to de novo review because the state courts did not consider this element of the claim. See Porter v. McCollum, 558 U.S. 30, 39 (2009).

1    On de novo review, the Court finds counsel's performance constitutionally deficient. The
2    record here shows that Pierson sought out and obtained a preliminary opinion from an expert,
3    Pleus, who identified a basis on which to attack the state's experts' opinion as to the cause of the
4    victim's eye injury. Pleus informed counsel that his "initial opinion, subject to completing [his]
5    research, is that the data provided to [him] does not scientifically support the Plaintiff's case that
6    the medication that was administered to K M caused the adverse effects that are reported in the
7    medical records." (Dkt. No. 13 at 93, 173.) Pleus's opinion was particularly important in the
8    context of a case involving the state's experts who could, at most, provide circumstantial
9    evidence that Mothershead had tampered with the eye drops. Indeed, Respondent admits that
10   "the prosecution had to rely on circumstantial evidence to establish the critical link between
11   Mothershead and a crime the prosecutor herself described as 'unthinkable.'" (Answer at 18 (Dkt.
12   No. 90).) And although Pleus did not identify some other source of contamination, he could have
13   offered counsel a means of providing expert assistance in deflating the state's experts' theories.
14   Counsel herself admitted that her "failure to seek additional funding for Dr. Pleus to complete his
15   work was not a strategic decision." (Pierson Decl. ¶ 19.) Instead, Pierson misunderstood the
16   potential import of Pleus's opinion and made an unreasoned decision not to pursue funding. (Id.)
17   This cannot be said to be an "informed legal choice" reached "after [an] investigation of
18   options." Strickland, 466 U.S. at 680.

19   The Court rejects Respondent's argument that Pierson simply made a strategic choice to
20   focus solely on cross-examining the state's ten medical doctors and five forensic experts.
21   (Answer at 17-18.) In an expert-heavy case where the State's evidence was circumstantial, such a
22   strategy would be nonsensical. As the Ninth Circuit has explained: "One doubts that there is a
23   lawyer alive who, with doctors available to prove a medical condition, would use lay witnesses
24

instead, especially in a criminal trial where a defendant needs only a reasonable doubt to prevail." Yun Hseng Liao v. Junious, 817 F.3d 678, 692 (9th Cir. 2016). While Liao involved a substantively different exculpatory expert opinion, the same reasoning applies here to Pleus, who could have at least pointed to what he believed were errors in the forensic examination of the eye drops and helped persuade the jury to harbor reasonable doubt of Mothershead's guilt. Respondent denigrates Pleus's opinions as "impeachment-type material" that was not "actual evidence" that could exculpate Mothershead. (Answer at 19.) But the Court does not share this self-serving view of Pleus's opinions, particularly given Pierson's admission her choice was not strategic.

The Court finds Mothershead has satisfied her burden to show deficient performance.

**C.     Inadequate Evidence of Prejudice**

Mothershead argues that the Washington Supreme Court unreasonably applied Strickland because it did not consider and weigh how Pleus's preliminary conclusion would have impacted the outcome at trial. While the Court disagrees the Supreme Court's prejudice analysis, it does not find the decision objectively unreasonable. The Court is therefore bound to deny the Petition.

Under Strickland, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury" to determine "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. In performing this analysis, "the reviewing court must consider all the evidence—the good and the bad—when evaluating prejudice." Wong v. Belmontes, 558 U.S. 15, 26 (2009) (per curiam); (Pl. Br. at 13.) Because Mothershead's claim is subject to AEDPA, she must show that the state court unreasonably applied federal law. See Harrington, 562 U.S. at 103. She must demonstrate that "the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103

While terse, the Washington Supreme Court's rejection of Mothershead's prejudice argument and consideration of the evidence was not objectively unreasonable. The Court agrees with Mothershead that the Supreme Court omitted any serious explanation of why Pleus' initial opinion would not have created a reasonable probability that a juror would reasonably doubt her guilt. But there is evidence that the Supreme Court understood Pleus' opinion and that it weighed the evidence. First, the Supreme Court accurately summarized Pleus's preliminary conclusion—that the "data provided to him did not scientifically support a finding that the medication caused the reported adverse effects." (Dkt. No. 14 at 48.) While the Supreme Court also determined that Mothershead "did not show what Dr. Pleus's ultimate opinion would have been or what his testimony would have consisted of," it also clearly understood his preliminary opinion. (Id.) Second, the Supreme Court assessed the State's case and agreed with the Court of Appeals' conclusion that there was not "a reasonable probability the testimony of Dr. Pleus would have altered the outcome." (Id.) While the Supreme Court took no pains to explain why this is true, it appears to be product of some weighing of the evidence. And given that this was a fact-intensive inquiry under a general rule, the Court must give deference and latitude to the state court's determination. See Yarborough, 541 at 664 ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.") Ultimately, the Court cannot conclude that the Supreme Court's decision was objectively unreasonable or that the Court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

1    Mothershead has also not offered any analogous case that might compel a different
2    outcome. She relies principally on a Ninth Circuit case where the Court found an unreasonable
3    application of Strickland where the state court ignored a potentially exculpatory expert's
4    proposed testimony and did not accurately weigh it against the evidence adduced at trial. Liao,
5    817 F.3d at 693-94. Not only is Liao non-binding authority for AEDPA purposes, it remains
6    factually distinguishable. See Marshall v. Rogers, 569 U.S. 58, 64 (2013) (explaining that circuit
7    precedent can only aid in determining whether a particular point has been clearly established by
8    Supreme Court precedent).
9    In Liao, the petitioner had been convicted of assaulting his girlfriend's son with a
10   hammer, and his principle defense was he lacked intent to harm because of a sleepwalking
11   disorder. See id., 817 F.3d at 681-83. Counsel for the petitioner retained an expert who indicated
12   the need for a sleep study to be able to confirm a sleepwalking diagnosis—the "heart of Liao's
13   defense." Id. at 682-83. Although counsel's request for funding for the sleep study was
14   ultimately approved, counsel never received the approval order from the court commissioner and
15   it "lay undiscovered in the court's file until Liao's conviction was on appeal." Id. at 683. The
16   expert nonetheless testified at trial in Liao's defense. "During the trial, the absence of a sleep
17   study turned out to be the Achilles heel of Liao's defense," id. at 683, and his one retained expert
18   was "'clobbered' on cross-examination" and "his credibility was pretty much destroyed," id. at
19   690. As part of the state habeas proceedings, Liao was given a sleep study and the evidence
20   clearly supported the expert's opinion that Liao was a sleepwalker and that his behavior on the
21   night of the incident was consistent with sleepwalking and a lack of intent to do harm. See id. at
22   687- 88. Nevertheless, the state court denied his habeas petition. The Ninth Circuit found the
23   state court's denial objectively unreasonable for five reasons. First, the state court failed to
24

acknowledge the validity of the sleepwalking study and "did not recognize its full force and importance." Id. at 692. Second, the court wrongly equated lay testimony about Liao's sleepwalking with expert testimony on the same, particularly where the lay witnesses were alleged to be biased. Id. Third, the "inexplicably minimized the devastating effect of the absence of a sleep study on [the trial expert's] testimony." Id. Fourth, the court incorrectly discredited the sleep study, based on a misunderstanding of the expert report. Id. at 692-93. Fifth, the state court highlighted facts that "might prove Liao was conscious and aware of what he was doing, [and] omit[ed] those that did not." Id. at 693.

The facts in Liao do not line up with those presented here. First, the Washington Supreme Court here did not fail to acknowledge or misrepresent Pleus's preliminary conclusions. Second, the Supreme Court did not wrongly claim that Mothershead was just as well off to have the expert than to have her counsel cross-examine the State's experts. Third, the Supreme Court did not necessarily highlight only those facts that supported the State's case. Liao showcases a state court's review that was plagued by fundamental misunderstandings of the missing expert testimony and a biased weighing of the evidence. Here, though certainly not detailed, the Supreme Court's decision does not reflect a fundamental bias or misunderstanding of the evidence. The Supreme Court's consideration of the missing expert opinion cannot be said to be objectively unreasonable.

The Court DENIES the petition under 28 U.S.C. § 2254(d)(1) because the Supreme Court's application of federal law was not objectively unreasonable.

ORDER DENYING PETITION FOR HABEAS CORPUS - 15

**D.    State Court did not Unreasonably Determine the Facts**

Mothershead argues that the Supreme Court's fact-finding was objectively unreasonable and that this wrongly precluded Mothershead from developing the evidence necessary to show prejudice. The Court remains unconvinced.

"Under § 2254(d)(2), a federal court is relieved of AEDPA deference when a state court's adjudication of a claim 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012) (quoting 28 U.S.C. § 2254(d)(2)). "To show such an error occurred, the petitioner must establish that the state court's decision rested on a finding of fact that is 'objectively unreasonable.'" Id. (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). "Challenges under § 2254(d)(2) fall into two main categories." Id. "First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." Id. "Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." Id.

Mothershead argues that the Supreme Court ignored records showing what Pleus' testimony would have been. (Br. at 19.) The Court finds no support for this claim. Pleus's preliminary opinion, "subject to completing [his] research, . . . that the data provided to [him] does not scientifically support the Plaintiff's case that the medication that was administered to K M caused the adverse effects that are reported in the medical records." (Dkt. No. 13 at 93, 173.) The Supreme Court explained that Pleus "came to a preliminary conclusion that the data provided to him did not scientifically support a finding that the medication caused the reported

adverse effects." (Dkt. No. 14 at 48.) This appears an accurate summary of Pleus's preliminary opinion, and the Court does not find it objectively unreasonable.

The Court also finds no merit in Mothershead's argument that the Supreme Court acted unreasonably in denying the request for an evidentiary hearing. "A state court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question." <u>Hibbler</u>, 693 F.3d at 1147. Here, the state court could reasonably conclude that the evidence before it was sufficient. Notably, the Supreme Court was in possession of Dr. Pleus' preliminary opinion, which supported Mothershead's defense. And now that Pleus has completed his opinions, Mothershead argues that "his ultimate conclusion is consistent with the exculpatory preliminary opinion he provided trial counsel." (Br. at 24.) This effectively undermines Mothershead's argument that the Supreme Court should have allowed further factual development or that it acted objectively unreasonably in denying the request for a hearing.

Lastly, the Court is not persuaded by Mothershead's argument that the Supreme Court ignored the limitations on the State's evidence and instead found the evidence "unassailable." (Br. at 20.) The Supreme Court's decision did not characterize the State's evidence as unassailable. Rather, the Court summarized the State's evidence as substantial and that, in its opinion, there was no reasonable probability that, even with Pleus's opinion, a reasonable juror would have had a reasonable doubt regarding guilt. It is true that the Court did not explain the circumstantial nature of the case. But this alone does not make its determination objectively unreasonable.

Accordingly, the Court finds that Mothershead has failed to meet her burden under § 2254(d)(2) to prove unreasonable factfinding that should be set aside and then reviewed de novo.

\* \* \*

Because Mothershead has not satisfied either § 2254(d)(1) or (d)(2), her claims are subject to § 2254(d)'s bar. The Court therefore DISMISSES the Petition.

**E.     No Evidentiary Hearing**

The Court DENIES Mothershead's request for an evidentiary hearing. While the Court had earlier intended to hold an evidentiary hearing, it reached that conclusion after finding Mothershead's claim procedurally barred and subject to de novo outside of AEDPA. Given the Ninth Circuit's ruling that the Court's examination is limited to the state court record under § 2254(d) and the Court's conclusion that Mothershead has failed to show an objectively unreasonable application of law or factual determination, the Court finds no basis to permit an evidentiary hearing and expand the record.

**F.     Motion to Strike**

Mothershead asks the Court to strike a notice of supplemental authority filed by Respondent. The Court DENIES this request as MOOT. The case presented by Respondent is not relevant and the Court has not considered it in ruling on the Petition.

**G.     Certificate of Appealability**

Though not briefed by the Parties, the Court finds that a Certificate of Appealability should issue. The Court finds Mothershead has made a substantial showing of a denial of her constitutional right to receipt of effective assistance of counsel. She should be permitted to pursue that issue on appeal, should she seek such relief. The Court therefore issues a certificate of appealability on her ineffective assistance of counsel claim.

## CONCLUSION

The Court issues this Order denying Mothershead's Petition with reluctance. Were the Court to have greater discretion to rule on this matter de novo, it would have little hesitance to find that Pierson's assistance of counsel was deficient and prejudiced Mothershead. But the Court's hands are tied by the exceedingly deferential standard set by Congress under AEDPA, which the Court must respect. Under this standard, the Court cannot conclude that the Supreme Court's prejudice analysis was objectively unreasonable or that it made objectively unreasonable factual determinations. On this basis the Court DENIES the Petition. But Court does issue a Certificate of Appealability on Mothershead's ineffective assistance of counsel claim.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 22, 2024.

Marsha J. Pechman
United States Senior District Judge